1

2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3

4   AMMAR HARRIS,                           )
                                            )
5               Plaintiff,                  )        Case No.: 2:22-cv-01058-GMN-BNW
        vs.                                 )
6                                           )        **ORDER GRANTING SUMMARY**
    STEVEN SISOLAK, *et al.*,               )        **JUDGMENT**
7                                           )
                Defendants.                 )
8   _____ )

9           Several motions are currently pending before the Court.  Defendants filed a Motion for

10  Summary Judgment, (ECF No. 29), as well as a Motion for Leave to File an Updated Motion

11  for Summary Judgment, (ECF No. 58).[1]  *Pro se* Plaintiff Ammar Harris filed his own Motion

12  for Summary Judgment, (ECF No. 49).  The parties filed Responses and Replies to all three

13  motions. (ECF Nos. 31, 34, 52, 54, 59, 60).  Plaintiff also filed a Motion for Leave to File

14  Document, which Defendants do not oppose.[2]  Because Plaintiff failed to exhaust his

15  administrative remedies, the Court GRANTS summary judgment for Defendants.

16  **I.    BACKGROUND**

17          Plaintiff received two stimulus checks through the Coronavirus Aid, Relief, and

18  Economic Security Act ("CARES Act") while he was incarcerated by the Nevada Department

19  of Corrections ("NDOC").[3]  (*See generally* First Am. Compl. ("FAC"), ECF No. 7).  He alleges

20  that prison officials deducted some money from his inmate account to pay his restitution

21

22  _____

23  [1] This action is against public officials sued in their official capacity only.  The Federal Rules of Civil Procedure automatically substitute the successor office holder in place of their predecessor. Fed. R. Civ. P. 25(d).

24  Defendants in this case are currently Francisco Aguilar, Jeremy Bean, James Dzurenda, William Gittere, and Joseph Lombardo.

25  [2] The Court GRANTS the Motion for Leave to File Document as unopposed. D. Nev. L.R. 7-2(d).
[3] Plaintiff also alleges that he never received one of the stimulus payments authorized by the CARES Act. (First Am. Compl. at 4, ECF No. 7).

1 obligation after he received the CARES Act payments. (*Id.*).  Plaintiff submitted an informal

2 grievance on this issue while he was housed at Ely State Prison ("ESP"). (Grievance 2006-31-

3 28730 at 3, Ex. B to Resp. to Pl.'s Mot. Summ. J., ECF No. 52-3).  Plaintiff was then

4 transferred to High Desert State Prison ("HDSP"), where he filed two second level grievances.

5 (*Id.* at 5, 9).

6       Plaintiff initiated this case to assert claims under the Fifth and Fourteenth Amendments

7 based on NDOC's deductions from his stimulus payments. (*See generally* FAC).[4]  The Court

8 initially entered a screening order dismissing all of Plaintiff's claims but granting Plaintiff leave

9 to amend his Fourteenth Amendment due process claim based on an intentional, authorized

10 deprivation of property. (Screening Order, ECF No. 8).  Instead of filing a second amended

11 complaint, Plaintiff filed a motion for reconsideration. (Mot. Reconsideration, ECF No. 9).  The

12 Court granted Plaintiff's motion and found that it could "liberally construe Plaintiff's

13 allegations as stating that prison officials changed state policy or law to increase the amount of

14 restitution that it could deduct from Plaintiff's account after he received stimulus payments."

15 (Reconsideration Order 2:1–4, ECF No. 10).  "In other words, Plaintiff asserts that prison

16 officials engaged in an authorized, intentional deprivation of his monetary property." (*Id.* 2:4–

17 5).  The Court therefore "ordered that the Fourteenth Amendment due process property

18 deprivation claim regarding the monetary deductions from Plaintiff's inmate account to pay

19 restitution after receiving stimulus funds will proceed." (*Id.* 2:18–21).  All other claims remain

20 dismissed. (*Id.* 2: 22–23).

21       Some confusion lingered regarding whether Plaintiff's Fourteenth Amendment claim

22 rested on allegations of authorized or unauthorized intentional deprivation of his monetary

23 property.  Defendants filed their initial motion for summary judgment under the presumption

24

25

---

[4] Plaintiff also alleged that the NDOC charged inmates a premium for postage stamps. (FAC).  This claim did not survive screening. (Screening Order, ECF No. 8).

1    that Plaintiff "denies that the NDOC was authorized by Nevada State Law to make deductions

2    from his Covid-19 stimulus checks." (Def.'s Mot. Summ. J. 2:17–18, ECF No. 29). Plaintiff's

3    motion for summary judgment argues that Defendants authorized the confiscation of funds.

4    (Pl.'s Mot. Summ. J. at 7, ECF No. 49). Plaintiff later asked to clarify the remaining claim in

5    this case, (Mot. Clarification, ECF No. 56), and the Court reiterated that the sole remaining

6    claim is a due process claim for *authorized* and intentional deprivation of monetary property.

7    (Min. Order, ECF No. 57). Defendants then moved to update their Motion for Summary

8    Judgment, (ECF No. 58).

9    **II.    LEGAL STANDARD**

10    The Federal Rules of Civil Procedure provide for summary adjudication when the

11    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

12    affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

13    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that

14    may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

15    A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

16    return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a

17    genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

18    differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.

19    1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary

20    judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving

21    party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*

22    *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to

23    isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477

24    U.S. 317, 323–24 (1986).

25

1    In determining summary judgment, a court applies a burden-shifting analysis. "When

2    the party moving for summary judgment would bear the burden of proof at trial, it must come

3    forward with evidence which would entitle it to a directed verdict if the evidence went

4    uncontroverted at trial. In such a case, the moving party has the initial burden of establishing

5    the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

6    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and

7    quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving

8    the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

9    evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

10    that the nonmoving party failed to make a showing sufficient to establish an element essential

11    to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477

12    U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be

13    denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress*

14    *& Co.*, 398 U.S. 144, 158–60 (1970).

15    If the moving party satisfies its initial burden, the burden then shifts to the opposing

16    party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

17    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). But a motion for summary judgement cannot be

18    granted based solely on the fact that it is not opposed. *See Heinemann v. Satterberg*, 731 F.3d

19    914, 917 (9th Cir. 2013); *see also* Local Rule 7-2(d). Instead, the movant must make a showing

20    that it is entitled to judgment. *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). In

21    assessing such a motion, courts must "ensure that the motion itself is supported by evidentiary

22    materials," *Pinder v. Employment Dev. Dept.*, 227 F. Supp. 3d 1123, 1135–36 (E.D. Cal. 2017),

23    and may only consider admissible, authenticated evidence. *Cristobal v. Siegel*, 26 F.3d 1488,

24    1494 (9th Cir. 1994).

25    ///

1    **III.    DISCUSSION**

2    Before reaching the merits of the parties' respective arguments for summary judgment,

3    the Court must first decide whether to grant Defendants' request to update their Motion for

4    Summary Judgment.  This Court has "discretion to entertain successive motions for summary

5    judgment." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).  In light of the

6    apparent confusion regarding whether Plaintiff's surviving claim is based on authorized or

7    unauthorized deprivation of property, the Court exercises its discretion and GRANTS

8    Defendants' Motion for Leave to File an Updated Motion for Summary Judgment, (ECF No.

9    58).  The Court will consider Defendants' updated Motion, filed as Exhibit 1 to their Motion

10   for Leave to File an Updated Motion for Summary Judgment, before turning to Plaintiff's

11   Motion for Summary Judgment.

12   **A. Defendants' Motion for Summary Judgment**

13   Defendants contend that they are entitled to summary judgment because (1) Plaintiff

14   lacks standing to seek injunctive or declaratory relief; (2) he failed to exhaust his administrative

15   remedies; (3) Defendants are entitled to qualified immunity; and (4) Defendants lacked

16   personal participation. (Updated Mot. Summ. J., Ex. 1 to Mot. for Leave, ECF No. 58-1).  The

17   Court agrees that the undisputed facts demonstrate Plaintiff's failure to exhaust his

18   administrative remedies.  Accordingly, the Court does not address Defendants' other

19   arguments.

20   The PLRA provides that "[n]o action shall be brought with respect to prison conditions

21   under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison,

22   or other correctional facility until such administrative remedies as are available are exhausted."

23   42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S.

24   81, 85 (2006).  The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93.

25   Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the

1    prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

2    "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the

3    prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

4        The defendant bears the initial burden to show that there was an available administrative

5    remedy, and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir.

6    2014).  Once that showing is made, the burden shifts to the prisoner, who must either

7    demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence

8    showing that there is something in his particular case that made the existing and generally

9    available administrative remedies effectively unavailable to him." *Id.* at 1172.  The ultimate

10   burden, however, rests with the defendant. *Id.*  Summary judgment is appropriate if the

11   undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to

12   exhaust. *Id.* at 1166; *see* Fed. R. Civ. P. 56(a).

13       Defendants included a copy of the NDOC Administrative Regulation ("AR") 740 and

14   Plaintiff's Grievance 2006-31-28730, in their Response to Plaintiff's Motion for Summary

15   Judgment and rely on these documents in their updated Motion for Summary Judgment. (AR

16   740 & Grievance 2006-31-28730, Exs. A, B to Resp. to Pl.'s Mot. Summ. J., ECF Nos. 52-1,

17   52-2).  Plaintiff also attached Grievance 2006-31-28720 to his First Amended Complaint.[5]

18   (Grievances, Ex. B. to FAC, ECF No. 7).

19       AR 740 governs the NDOC grievance policy. (AR 740, Ex. A to Resp. to Pl.'s Mot.

20   Summ. J., ECF No. 52-1).  Before beginning the grievance process, an inmate must first

21   attempt to resolve the matter by other means, "such as discussion with staff or submitting an

22   inmate request form." (AR 740.08(1), Ex. A to Resp. to Pl.'s Mot. Summ. J.).  If the inmate

23   cannot otherwise resolve the issue, then the inmate may begin the grievance process. (*Id.*).

24

25   [5] Plaintiff also included documentation of Grievance 2006-31-28318 with his First Amended Complaint.
     (Grievances, Ex. B. to FAC, ECF No. 7).  Grievance 2006-31-28318 relates to Plaintiff's dismissed claim
     regarding NDOC charging inmates a premium for postage stamps.

1    AR 740 contains three levels of grievance procedures an offender must use to exhaust

2    the administrative remedy; that is, the informal level, a first level appeal, and a second level

3    appeal. (AR 740.08–740.10, Ex. A to Resp. to Pl.'s Mot. Summ. J.).  If a grievance is not

4    accepted, the inmate may not appeal that decision to the next procedural level. (*Id.*

5    § 740.03(5)).  An offender whose grievance is denied in its entirety may appeal the grievance to

6    the next level unless the action requested has already been granted at a lower level. (*Id.*

7    § 740.03(6)).  AR 740 delineates timeframes for each level of the grievance process, but

8    "[t]imeframes do not apply if the inmate has been transferred." (*Id.* § 740.06(2)).  "[A]

9    grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."

10    *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646,

11    650 (7th Cir. 2002)).

12    Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies

13    because (1) Plaintiff's grievances fail to allege that Defendants engaged in authorized activity

14    when making deductions from his stimulus payments and (2) Plaintiff failed to fully complete

15    all steps of the grievance process. (Updated Mot. Summ. J. 13:9–14:26).  Although Defendants

16    are correct that throughout the grievance process, Plaintiff claimed that the alleged deprivation

17    of property was unauthorized, the Court finds that Plaintiff sufficiently alerted the prison to the

18    nature of the wrong; namely, that the prison wrongfully deducted money from his stimulus

19    payments. *Griffin*, 557 F.3d at 1120 ("A grievance need not include legal terminology or legal

20    theories unless they are in some way needed to provide notice of the harm being grieved.").

21    The Court thus turns to whether Plaintiff completed the grievance process.

22    Plaintiff filed his informal grievance in Grievance 2006-31-28730 on September 17,

23    2021, while he was at ESP, claiming that the prison transferred funds from his inmate trust

24    account. (Grievance 2006-31-28730 at 3, Ex. B to Resp. to Pl.'s Mot. Summ. J., ECF No. 52-

25    3).  The prison rejected this informal grievance because it failed to contain proper

1    documentation and instructed Plaintiff to resubmit his grievance at the informal level with all

2    forms attached. (*Id.* at 2).  There is no evidence that Plaintiff resubmitted his informal level

3    grievance.

4          After Plaintiff was transferred to HDSP, he filed a second level grievance in 2006-31-

5    28730. (*Id.* at 5).  The second level grievance states that he filed an informal grievance on

6    September 17, 2021, at ESP, and a first level grievance on December 16, 2021, at HDSP. (*Id.*).

7    Defendants are unable to locate the December 16, 2021, first level grievance. (Updated Mot.

8    Summ. J. 14:3–4).  This second level grievance was rejected because Plaintiff refused to sign

9    his grievance and the grievance was missing documentation. (Grievance 2006-31-28730 at 7,

10    Ex. B to Resp. to Pl.'s Mot. Summ. J.).  Plaintiff then filed another second level grievance in

11    Grievance 2006-31-28730, this time stating that he filed an informal grievance on November 7,

12    2021, at HDSP, and a first level grievance on January 8, 2022. (*Id.* at 9).  This second level

13    grievance was rejected for the same reasons as the prior second level grievance. (*Id.* at 10).

14          Although Plaintiff's subsequent second level grievance claims that he filed an informal

15    grievance on November 7, 2021, there is no evidence that Plaintiff ever resubmitted his

16    grievance at the informal level as required by the first rejection letter he received.  Plaintiff did

17    not submit any documentation of this informal grievance.  Moreover, both parties appear to be

18    missing any evidence of a first level grievance.

19          Plaintiff asserts that Defendants failed to produce evidence regarding exhaustion. (Reply

20    to Pl.'s Mot. Summ. J. at 5, ECF No. 54).  Because Plaintiff was transferred to a different

21    prison while he was in the middle of the grievance process, the Court is hesitant to find that

22    Plaintiff failed to exhaust his administrative remedies based on the absence of documentation

23    that may have gone missing during his transfer.  And the Court must view the evidence in the

24    light most favorable to Plaintiff.  But even if the Court were to overlook the missing informal

25    and first level grievances, neither of the two second level grievances were denied on the merits.

Rather, they were both rejected because Plaintiff refused to sign his grievances and the grievances were missing documentation.  That is, Plaintiff did not exhaust his administrative remedies because his grievances were never accepted and denied on the merits.  Thus, Defendants met their initial burden of proving that Plaintiff failed to exhaust an available administrative remedy, and Plaintiff did not offer any evidence rebutting Defendants' argument.  Accordingly, the Court GRANTS summary judgment for Defendants.

### B.  Plaintiff's Motion for Summary Judgment

Because the Court GRANTS summary judgment for Defendants based on Plaintiff's failure to exhaust his administrative remedies, Plaintiff's Motion for Summary Judgment is DENIED as moot.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Leave to File an Updated Motion for Summary Judgment, (ECF No. 58), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 29), as updated by ECF No. 58, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 49), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Document, (ECF No. 35), is **GRANTED**.

The Clerk of Court is kindly instructed to enter Judgment for Defendants and close the case.

**DATED** this __22__ day of July, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court